UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AMERICAN AIRLINES, INC., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> U.S.A. GATEWAY, § <br> § <br> Defendant. § <br> § <br> § | Civil Action No. 4:23-cv-00781-O |

## MEMORANDUM OPINION & ORDER

Before the Court are Defendant U.S.A. Gateway's Partial Motion to Dismiss or, in the Alternative, Motion for a More Definite Statement (ECF No. 10), filed September 18, 2023; Plaintiff American Airlines, Inc.'s Response in Opposition to the Motion (ECF No. 17), filed October 10, 2023; and Defendant's Reply in Support of the Motion (ECF No. 19), October 24, 2023. For the reasons set forth herein, the Court **DENIES** the Partial Motion to Dismiss or, in the Alternative, Motion for a More Definite Statement (ECF No. 10).

I.   **BACKGROUND**[1]

On July 26, 2023, Plaintiff American Airlines, Inc. ("Plaintiff" or "AA") brought this lawsuit against Defendant U.S.A. Gateway d/b/a GTT Travel ("Defendant" or "GTT") in federal district court, alleging: (I) breach of contract in regard to the Governing Travel Agency Agreements ("GTAA"); (II) trademark infringement under 15 U.S.C. § 1114; (III) false

---

[1] Unless otherwise noted, the facts recited herein are drawn from Plaintiff's Complaint. *See* Pl.'s Compl., ECF No. 2. At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to Plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

designation of origin under 15 U.S.C. § 1125(a); and (IV) trademark dilution under 15 U.S.C. § 1125(c).

### A. The Parties

Plaintiff AA is a Fort Worth-based airline. Since its inception more than ninety years ago, AA has become the largest commercial airline in the world—boasting the largest fleet of airplanes, the greatest number of passengers carried, and the most revenue passenger miles flown. AA possesses worldwide name recognition and goodwill. AA alleges that it is a leading industry innovator with reliable, quality customer service and valued customer relationships—especially as it relates to the technologies, information systems, and applications that support and enhance its operations and the customer experience.

AA invests substantial time and resources into developing essential data to guide its business. Developing its flight routes and fare schedules necessitates the use of data technologies to balance a complex matrix of factors. Those factors include, *inter alia*, the number of passengers likely to fly each route, the airplanes available to fly each route, the number of passengers each airplane can carry, the number of business, casual, or budget travelers on each route, airport capacity and crew availability at the ends of each route, ramp, baggage, gate, ticket and customer service availability, weather impacts, and competitor airline routes. AA has developed and deployed IT systems to support these operations, along with intricate algorithms and best practices for assembling, collating, and filtering essential business data in a manner that enables AA personnel to make well-calculated, strategic decisions on setting routes and fares.

Producing successful flight routes and fare schedules in accordance with AA's meticulous business operations, pinpoint data processing and analytics, and strategic decision-making results in efficient and complete utilization of its airplanes and improved customer satisfaction.

Conversely, AA's capacity to promulgate successful flight routes and fare schedules is substantially undermined or entirely upended whenever it receives false, misleading, or otherwise inaccurate or extraneous flight bookings.

Defendant GTT is a large-scale air travel consolidator based in Plano, Texas. GTT has negotiated with AA, among other airlines, for access to certain fare codes and for incentives based on overall volume of sales. GTT claims a yearly turnover of more than $2 billion. GTT achieves its sales volume by enlisting smaller travel agencies as sub-agents. These sub-agents pay GTT for access to the special fares that GTT has accessed via negotiation with airlines. It profits from the fees it collects from sub-agents along with the commissions and incentives it obtains from airlines.

### B. The Nature of the Lawsuit

An airline ticket is a contract of carriage between AA and the customer-passenger. As such, only an authorized agent of American can issue a ticket to a customer-passenger. As is the case with GTT, an entity becomes an authorized international agent of AA via registration with the International Airline Transport Association ("IATA") and an authorized domestic agent of AA via registration with the Airlines Reporting Corporation ("ARC"). In its capacity as AA's legal agent, the scope of GTT's authority, standards, and duties of care, as well as the applicable rules and regulations it is subject to, are set forth in the GTAA. The GTAA includes the ARC Agent Reporting Agreement ("ARC ARA") and accompanying handbooks, rules, and policies referenced therein, the IATA Passenger Sales Agency Agreement ("IATA PASA") and accompanying handbooks, rules, and policies referenced therein, the AA Addendum to the GTAA ("Addendum"), and the incentive agreement specific to the AA-GTT agency relationship ("GTT Incentive Agreement").

AA alleges that it has recently become aware of GTT breaching the GTAA in several respects, including but not limited to: failing to both train its sub-agents and monitor its sub-agents' behaviors; engaging in forbidden ticketing practices; hiding travel agency fees and charges from customers; charging customers fabricated fees unauthorized by AA; failing to report the identities of its sub-agents to AA; actively attempting to conceal the identities of its sub-agents from AA; and circumventing transparency requirements that every authorized agent of AA is duty-bound to comply with.

AA alleges that GTT profits from these alleged schemes in multiple facets. For one, AA contends that the GTT sub-agents divert customers who desire to contact AA directly by deceiving them into calling the wrong phone number. These customers ultimately book tickets through GTT, which increases GTT's bookings, commissions, and incentives. On top of the incentives already received from the AA-GTT agency relationship, GTT also collects money from its sub-agents. Specifically, AA alleges that the sub-agents typically pay a fixed fee-per-booking plus a percentage cut of the overall booking to GTT. AA maintains, therefore, that when a sub-agent poses as AA, GTT collects fees from that sub-agent, which GTT would not otherwise receive if the customer contacted AA directly in accordance with his or her true intentions. AA also asserts that GTT collects an additional percentage cut of the non-AA-authorized extra fees that GTT sub-agents charge customers.

In addition, AA alleges that GTT and its sub-agents inflate the actual costs of airline tickets by charging customers more than the actual ticket price. AA posits that GTT and its sub-agents pocket the difference for their own benefit. Furthermore, AA alleges that GTT and its sub-agents also engage in prohibited practices—namely, "hidden city" ticketing—to lower the costs of airline

tickets. But instead of passing these lower costs onto customers, GTT and its sub-agents pocket this difference for their own benefit as well, according to AA.

AA brought this present action in federal district court to challenge the alleged actions of GTT and those of its GTT sub-agents conducted outside the scope of authority granted to them. In the Complaint, AA claims that GTT breached several of its contractual duties to AA under the GTAA and that GTT and its sub-agents have unjustly enriched themselves in consequence. AA's Complaint also asserts claims that GTT has committed federal trademark infringement, false designation of origin, and dilution against AA's rights to the many trademarks and service marks in its possession ("AA Marks"). AA alleges that GTT transgressed various Lanham Act prohibitions in the course of its efforts to fraudulently mislead airline customers into believing that the commercial conduct of GTT and its sub-agents is sponsored or approved by, or otherwise affiliated with, AA.

### C. The Motion Before the Court

To the extent that AA's Complaint alleges causes of action for federal trademark infringement, false designation of origin, and dilution under the Lanham Act, GTT moves for partial dismissal pursuant to Rule 12(b)(6) or, alternatively, a more definite statement pursuant to Rule 12(e).[2] Following completion of the parties' briefing, that Motion is now ripe for the Court's review.[3]

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Motion to Dismiss

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The

---

[2] Def.'s Mot. to Dismiss, ECF No. 10 (citing FED. R. CIV. P. 12(b)(6), 12(e)).
[3] *Id.*; Pl.'s Resp., ECF No. 17; Def.'s Reply, ECF No. 19.

Rule 8(a) pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy this standard on its claim, the defendant may file a motion to dismiss it under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Unlike a "probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 570). Where a complaint contains facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier*, 509 F.3d at 675. However, the court may not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott,*

*M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citation and internal quotation marks omitted).

### B.  Rule 12(e) Motion for a More Definite Statement

A defendant may also test a plaintiff's claim against the Rule 8 pleading standard by moving for "a more definite statement of [the] pleading" under Rule 12(e) if it is "so vague or ambiguous that the [defendant] cannot reasonably prepare a response." FED. R. CIV. P. 12(e). "When a party moves for a more definite statement under Rule 12(e), the court is granted discretion to determine whether the complaint is so vague that the moving party cannot reasonably be required to frame a responsive pleading." *Chapman v. Dallas Cnty. Cmty. Coll. Dist.*, No. 3:05-CV-1809-G, 2006 WL 3442057, at *4 (N.D. Tex. Nov. 29, 2006) (Fish, C.J.) (citing *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959)).

Where the defendant merely complains of a vague or ambiguous matter that is curable through clarification and development during discovery—rather than one that impedes upon its ability to respond to the plaintiff's complaint—an order directing the plaintiff to state its claim more definitely is unwarranted. *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 972 (N.D. Tex. 2006) (Means, J.). As such, Rule 12(e) motions are generally disfavored. *Travelers Indem. Co. v. Presbyterian Healthcare Res.*, 313 F. Supp. 2d 648, 654 (N.D. Tex. 2004). And they are granted only for the narrow purpose of remedying a wholly unintelligible pleading, rather than adding more detail to an otherwise intelligible one. *Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 639 (S.D. Tex. 2001) (citation omitted). The decision to grant a defendant's Rule 12(e) motion and thereby order a plaintiff to state its claim more definitely rests within the sound discretion of the district court. *See Travelers Indem. Co.*, 313 F. Supp. 2d at 654.

### III.  ANALYSIS

Under Rule 12, GTT moves for a partial dismissal of AA's complaint—or a more definite statement of the pleading therein—insofar as it alleges claims of (A) trademark infringement under 15 U.S.C. § 1114, (B) false designation of origin under 15 U.S.C. § 1125(a), and (C) dilution under 15 U.S.C. § 1125(c) against GTT.[4] Having reviewed the parties' briefing, evidence, and applicable law, the Court determines that, at this stage of the proceedings, AA has adequately pled "a claim upon which relief can be granted" for each of its Lanham Act claims brought against GTT. FED. R. CIV. P. 12(b)(6).

### A. Trademark Infringement (15 U.S.C. § 1114)

With respect to the Lanham Act cause of action for trademark infringement, the Court finds that AA has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

***Legal Standard.*** To successfully plead a claim for trademark infringement under 15 U.S.C. § 1114, two elements must be adequately alleged: (1) the plaintiff "possesses a legally protectable trademark" and (2) the defendant's "use of this trademark 'creates a likelihood of confusion as to source, affiliation, or sponsorship.'" *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)); *see also Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 426 (5th Cir. 2021) (employing this inquiry within the motion to dismiss framework).

"To be legally protectable [under the first element], a mark must be distinctive in one of two ways": (1) inherent distinctiveness or (2) acquired distinctiveness. *Nola Spice Designs*, 783 F.3d at 537 (cleaned up). The registration of marks with the United States Patent and Trademark Office ("USPTO") is "prima facie evidence that the marks are inherently distinctive." *Id.* However,

---

[4] Def.'s Mot. to Dismiss 5, ECF No. 10.

this presumption of legal validity accorded to a federally registered trademark may be rebutted by a contrary showing "that the mark is not inherently distinctive." *Streamline*, 851 F.3d at 451 (cleaned up).

Under the second element, the "[l]ikelihood of confusion" as to the source, affiliation, or sponsorship of a legally protectable trademark must be "more than a mere possibility of confusion. *Id.* at 453 (cleaned up). Rather, "the plaintiff must demonstrate a probability of confusion" spawned by the defendant's use. *Id.* This is "the gravamen for any action of trademark infringement." *Adler*, 10 F.4th at 426 (cleaned up). Courts examine the following non-exhaustive factors, or "digits of confusion," to evaluate whether there exists a probability of confusion: "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). "No single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors." *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 578 (5th Cir. 2008) (citation omitted). Moreover, "the digits may weigh differently from case to case, depending on the particular facts and circumstances involved." *Xtreme Lashes*, 576 F.3d at 227 (cleaned up).

*Analysis.* AA has pled factual content that plausibly establishes each element of trademark infringement and so enables the Court to reasonably infer GTT's liability under the Lanham Act. *Iqbal*, 556 U.S. at 678.

Protectable Marks. The Complaint articulates allegations that, for decades on end, AA has used and continues to use its AA Marks such as the "American Airlines" trade name and "Flight Symbol" design—alone and in combination with other words and designs—in connection with its

9

website, loyalty programs, discount programs, incentive award programs, transportation services, and travel-related services, in interstate and intrastate commerce.[5] The AA Marks have served and continue to serve as globally renowned, unique source-of-origin identifiers of AA and AA's airline-specific travel services—especially the quantitative, qualitative, and reputational characteristics of its airline services that are peculiar only to the AA brand.[6] The Complaint further alleges facts to support that AA registers these AA Marks on the Principal Register of the USPTO.[7]

These pleadings presumptively demonstrate AA's possession of inherently distinctive, and thus legally protectable, trademarks with respect to the AA Marks. *See Nola Spice Designs*, 783 F.3d at 537. And GTT does not dispute any of the allegations provided therein.[8] AA's pleadings therefore plausibly establish the first element of trademark infringement on their face. *See Streamline*, 851 F.3d at 450–51.

Use of the Marks. GTT maintains that AA fails to plead facts sufficient to evince usage of the AA Marks that is unauthorized by AA and attributable to GTT.[9] The Court disagrees. The Complaint unmistakably alleges well-pleaded facts that GTT misuses the AA Marks by holding itself out as an authorized agent of AA, while engaging in commercial conduct that exceeds the boundaries of GTT's narrow authority prescribed under the GTAA. Specifically, AA alleged detailed factual content in support of: (1) the GTAA's explicit limitations on GTT's authority to act as an agent of AA; (2) examples of GTT exceeding that authority through unauthorized ticketing practices and charges to AA customers; (3) GTT's display and use of the AA Marks to represent to AA customers that GTT acts as an online travel agency for AA, and thus within the

---

[5] Pl.'s Compl. ¶¶ 70–71, ECF No. 2.
[6] *Id.* ¶¶ 75–78.
[7] *Id.* ¶¶ 72–73.
[8] Def.'s Answer ¶¶ 70–78, ECF No. 12; *see generally* Def.'s Mot. to Dismiss, ECF No. 10.
[9] Def.'s Mot. to Dismiss 7–12, ECF No. 10.

AA-GTT agency relationship; and (4) GTT's knowledge and concealment of, assistance in, and contribution to its sub-agents' efforts to engage in the same commercial conduct, in further excess of its lawful agent authority under the GTAA.[10]

These pleadings suffice at this stage for plausibly establishing GTT's trademark infringement liability through its own unauthorized use of the AA Marks. *See* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25.30 (5th ed.) ("A use by a licensee which is outside the scope of the license is both trademark infringement and breach of contract."). Likewise, the pleadings also plausibly allege such liability for GTT's sub-agents. *See Luxottica Grp., S.p.A v. Ochoa's Flea Mkt., LLC*, No. 7:20-cv-00061, 2022 WL 836823, at *15 (S.D. Tex. Mar. 21, 2022) ("To sufficiently plead . . . liability for contributory trademark infringement, Plaintiffs only need to allege that Defendants had knowledge of infringing activity and materially contributed . . . to the infringing conduct of another.").

<u>Likelihood of Confusion</u>. GTT contends that AA further failed to adequately plead a likelihood of confusion as to the source, affiliation, or sponsorship of the AA Marks resulting from GTT's use.[11] The Court disagrees. The Complaint alleges sufficiently well-pleaded facts to draw reasonable inferences that: GTT is engaging in abusive ticketing practices and issuing fictional, excessive, and hidden charges and fees to AA customers outside the scope of its agency authority as expressly defined in the GTAA; GTT is simultaneously displaying and using the exact AA Marks to fraudulently misrepresent itself before AA customers as an online travel agency operating on behalf of AA; as a consequence, AA customers have either been misled into or made confused as to the mistaken belief that certain unauthorized commercial conduct orchestrated by GTT—

---

[10] Pl.'s Compl. ¶¶ 2, 8, 48–55, 58–69, 79–80, 96, 110, 114, 124, ECF No. 2.
[11] Def.'s Mot. to Dismiss 12–14, ECF No. 10.

such as the excess charges and hidden fees for airline tickets—are actually sponsored, endorsed, or approved by, or at the very least affiliated with, AA itself.[12]

These pleadings plausibly establish that GTT's use of the identical AA Marks has induced and continues to induce a likelihood of confusion as to their source, affiliation, and sponsorship. *See Petro Franchise Sys., LLC v. All Am. Props., Inc.*, 607 F. Supp. 2d 781, 788 (W.D. Tex. 2009) ("[A] district court may confine its digits-of-confusion analysis to the determination that the marks used by the allegedly infringing party are the exact marks owned by the plaintiff and, if they are, find that confusion is likely." (citing *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 310 (5th Cir. 2008))).

In light of the Court's findings on allegations of use and likelihood of confusion put forth in the Complaint, AA's pleadings plausibly establish the second and final element of trademark infringement. *See WENO Exch. LLC v. Redwood HCA LLC*, No. 6-20-CV-00129-ADA-JCM, 2022 WL 17812834, at *3 (W.D. Tex. Aug. 24, 2022), *report and recommendation adopted*, No. 6-20-CV-00129-ADA-JCM, 2022 WL 17812835 (W.D. Tex. Oct. 26, 2022).

Because AA has pled factual allegations of trademark infringement that "plausibly give rise to an entitlement to relief" under the Lanham Act, the Court **DENIES** GTT's Motion insofar as it requests dismissal of AA's federal trademark infringement claim. *Iqbal*, 556 U.S. at 679.

### B. False Designation of Origin (15 U.S.C. § 1125(a))

Regarding the Lanham Act cause of action for false designation of origin, the Court similarly finds that AA has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

---

[12] Pl.'s Compl. ¶¶ 3, 8, 51, 79–80, 105–06, 114–15, ECF No. 2.

*Legal Standard.* To successfully plead a claim for false designation of origin under 15 U.S.C. § 1125(a), a plaintiff must adequately allege the same two elements required to successfully plead trademark infringement under 15 U.S.C. § 1114. *Adler*, 10 F.4th at 426 ("The same elements apply to both causes of action." (quoting *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235–36 & n.8 (5th Cir. 2010))).

*Analysis.* For the same reasons expounded upon in the Court's prior analysis concerning trademark infringement, AA has pled factual allegations of false designation of origin that "plausibly give rise to an entitlement to relief" under the Lanham Act. *Iqbal*, 556 U.S. at 679.

The Court therefore **DENIES** GTT's Motion insofar as it requests dismissal of AA's federal false designation of origin claim.

**C. Dilution (15 U.S.C. § 1125(c))**

Lastly, in terms of the Lanham Act cause of action for dilution, the Court again finds that AA has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

*Legal Standard.* To successfully plead a claim for dilution under 15 U.S.C. § 1125(c), four elements must be adequately alleged: (1) the plaintiff owns a famous and distinctive mark; (2) the defendant has commenced using a mark in commerce in a manner that dilutes this famous and distinctive mark; (3) the similarity between the defendant's mark and the plaintiff's mark gives rise to an association between those marks; and (4) this association is likely to impair the distinctiveness or harm the reputation of the plaintiff's mark. *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 536 (5th Cir. 2012) (citing *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 264-65 (4th Cir. 2007)); *Nola Spice Designs*, 783 F.3d at 548 (citing *id.*).

A famous mark is "one widely recognized by the public as designating the source of the mark owner's goods" or services. *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 147 (2023) (cleaned up). Registration of a mark with the USPTO is "*prima facie* proof that [it] is distinctive." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 567 (5th Cir. 2005) (citation omitted).

Dilution of a famous and distinctive mark "can occur by tarnishment as well as by blurring." *Jack Daniel's Props., Inc.*, 599 U.S. at 147 (cleaned up). Dilution via blurring "involves a diminution in the uniqueness or individuality of a mark" due to "its use on unrelated goods" or services. *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 489 (5th Cir. 2004). Dilution via tarnishing occurs when a mark is "linked to products [or services] of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods [or services] with the plaintiff's unrelated goods or services." *Id.* (cleaned up).

The Lanham Act makes it unnecessary to allege any "presence or absence of actual or likely confusion, of competition, or of actual economic injury" in order to adequately plead dilution of a famous and distinctive mark. 15 U.S.C. § 1125(c)(1). But in spite of that lesser bar, the Lanham Act carves out several "categories of activity not actionable as dilution" for purposes of pleading a viable claim. *Jack Daniel's Props., Inc.*, 599 U.S. at 147 (cleaned up) (citing 15 U.S.C. § 1125(c)(3)). These categories include any "fair use" (or facilitation thereof) of the plaintiff's mark other than "as a designation of source for the [defendant's] own goods or services," all forms of "news reporting and news commentary" on the plaintiff's mark, and any "noncommercial use" of the plaintiff's mark. *Id.* at 147–48 (cleaned up).

*Analysis.* AA has pled factual content that plausibly establishes each element of dilution and so enables the Court to reasonably infer GTT's liability for the misconduct alleged under the Lanham Act. *Iqbal*, 556 U.S. at 678.

Famous and Distinctive Marks. Based on well-pleaded facts that GTT does not dispute, as well as the Court's previous finding on mark protectability in the trademark infringement context, the Complaint adequately alleges AA's ownership of famous and distinctive marks with respect to the AA Marks.[13] AA's pleadings therefore plausibly establish the first element of dilution. *Cf. Jack Daniel's Props., Inc.*, 599 U.S. at 147 (concluding that a mark's wide recognition among the public as a designation of its owner's goods or services amounts to fame); *Singh*, 428 F.3d at 567 (explaining that USPTO registration presumptively demonstrates a mark's distinctiveness).

Dilutive Use, Association, and Tarnishment. Based on the Court's related findings on use and likelihood of confusion in the trademark infringement context, as well as additional well-pleaded facts in the Complaint, AA adequately alleges that GTT uses the exact AA Marks in such a way that dilutes their famous and distinctive quality and plainly gives rise to an association with the identical AA Marks owned and used by AA itself.[14] Similarly, AA adequately alleges at this stage that this association is likely to inflict reputational damage upon the AA Marks normally identified with AA's travel services due to the allegedly deceptive, abusive, exorbitant, and second-rate nature of the travel services furnished by GTT and its sub-agents.[15]

AA's pleadings therefore plausibly establish the last three elements of dilution. *See Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 434 (2003) ("[A]ctual dilution can reliably be proved through circumstantial evidence—the obvious case is one where the junior and senior

---

[13] *Compare* Pl.'s Compl. ¶¶ 70–78, 120–22, 127, ECF No. 2, *with* Def.'s Answer ¶¶ 70–78, 103, ECF No. 12 *and* Def.'s Mot. to Dismiss, ECF No. 10.
[14] *See* Pl.'s Compl. ¶¶ 2, 8, 48–55, 58–69, 79–80, 96, 110, 114, 120–24, 127–28, ECF No. 2.
[15] *See id.*

marks are identical."); 15 U.S.C. § 1125(c)(2)(C) (defining "dilution by tarnishment" as the "association arising from the similarity between a mark or trade name and a famous mark that *harms the reputation* of the famous mark." (emphasis added)); *Scott Fetzer Co.*, 381 F.3d at 489 (explaining that tarnishing occurs where a famous mark is "linked to products [or services] of shoddy quality, or is portrayed in an unwholesome or unsavory context" such that "the public will associate the lack of quality of the defendant's goods [or services] with" those of the plaintiff's (cleaned up)).

Because AA has pled factual allegations of dilution that "plausibly give rise to an entitlement to relief" under the Lanham Act, the Court **DENIES** GTT's Motion insofar as it requests dismissal of AA's federal dilution claim. *Iqbal*, 556 U.S. at 679.

\* \* \* \*

For the foregoing reasons, the Court concludes that AA has plausibly stated claims upon which relief can be granted at this stage for trademark infringement, false designation of origin, and dilution under the Lanham Act. *Twombly*, 550 U.S. at 570. Based on that conclusion, the Court is of the opinion that the Rule 12(b)(6) partial motion to dismiss the Complaint to the extent that it alleges violations of the Lanham Act should be **DENIED**. FED. R. CIV. P. 12(b)(6).

With respect to GTT's request for AA to state its Lanham Act claims more definitely, the Court finds GTT's reasoning superfluous relative to the arguments raised in support of dismissal. Moreover, the additional clarity and detail sought in this Rule 12(e) motion for a more definite statement can be sought through the discovery process, and so the Court is further of the opinion that it should be **DENIED**. *Arista Records*, 453 F. Supp. 2d at 972.

## IV.  CONCLUSION

Accordingly, it is **ORDERED** that Defendant U.S.A. Gateway's Partial Motion to Dismiss or, in the Alternative, Motion for a More Definite Statement (ECF No. 10) is hereby **DENIED**.

**SO ORDERED** on this **23rd day** of **January, 2024**.

*[signature]*
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**